*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1158**

In re the Marriage of: Mary Yang, petitioner,
Respondent,

vs.

Chue Fang,
Appellant.

**Filed April 27, 2015
Reversed and remanded
Connolly, Judge**

Ramsey County District Court
File No. 62-FA-12-3640

Lee Moua, St. Paul, Minnesota (for respondent)

Jonathan Geffen, Arneson & Geffen, PLLC, Minneapolis, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Peterson, Judge; and Harten, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**CONNOLLY**, Judge

In this marriage-dissolution dispute, appellant-husband argues that the district court erred in determining that the parties' cultural marriage ceremony created a legal marriage. We reverse and remand to the district court for further proceedings.

**FACTS**

Appellant Chue Fang and respondent Mary Yang met in 1975 while living in the Nong Khai refugee camp in Thailand. Both parties identify as Hmong and are originally from Laos. In November 1975, the parties participated in a traditional Hmong wedding ceremony. The parties have held themselves out as husband and wife ever since.

In 1978, appellant and respondent immigrated to the United States. They bore and raised six children, all of whom are now adults. They purchased a home as husband and wife, and filed tax returns as "married filing jointly" from 1980-2005. They had joint bank accounts, attended church as a family, and consistently held themselves out to the community as a married couple.

In December 2012, respondent filed a petition for dissolution of marriage. Appellant filed an answer and counter-petition that alleged the parties were never legally married. The district court held an evidentiary hearing on the issue of "whether or not there was a valid marriage that can be recognized by the state of Minnesota."[1] Respondent presented evidence that she and appellant participated in a traditional Hmong

---

[1] The issue was initially phrased as "whether a Hmong cultural marriage ceremony existed between the parties." The issue was rephrased before the hearing and the record was left open for submissions on the amended issue.

wedding ceremony while living in Thailand. She also testified that before immigrating to the United States she and appellant had to take an oath in the presence of an American official and state that they were married. She testified that their immigration documents listed them as married, but she was unable to produce the documents.

Appellant argued that the cultural ceremony never took place because respondent was already married to a different man. He also argued that the cultural ceremony could not establish a valid marriage because it did not conform to the marriage laws of Thailand, where the ceremony took place. However, he did admit that he and respondent held themselves out as a married couple and that the community considers them to be husband and wife.

On February 19, 2014, the district court issued an order that determined the parties were legally married.[2] The district court found that the testimony clearly established that the parties and their families participated in a traditional Hmong wedding ceremony in Thailand and that the ceremony was completed with only nominal irregularities. The district court determined that competent evidence established that the parties were married, and that appellant had the burden of proof to show the marriage was not valid. The district court determined that appellant did not satisfy that burden. Appellant filed a motion for amended findings, which the district court denied. The district court then entered final partial judgment on the issue of whether the parties were legally married. This appeal follows.

---

[2] A referee issued the findings of fact and conclusions of law and it was countersigned by a district court judge pursuant to Minn. Stat. § 484.70, subd. 7(e) (2014).

3

## DECISION

Appellant argues that the district court erred in determining that the parties were married, asserting that "[a] cultural marriage does not create a legal, valid marriage." We agree.

"In reviewing the trial court's determination that the parties were legally married, this court must decide whether the trial court correctly applied the law." *Ma v. Ma*, 483 N.W.2d 732, 735 (Minn. App. 1992). "When the fact of marriage is required or offered to be proved before any court, evidence of . . . general repute, or of cohabitation as married persons, or any other circumstantial or presumptive evidence from which the fact may be inferred, shall be competent." Minn. Stat. § 602.02 (2014). Once evidence of a marriage is shown, a strong presumption of its legality arises and the burden of proof shifts to the objecting party to overcome the presumption. *In re Lando's Estate*, 112 Minn. 257, 266, 127 N.W. 1125, 1128 (1910).

A foreign marriage may be recognized in Minnesota even if it does not conform with Minnesota law. *Ma*, 483 N.W.2d at 735. The Minnesota Supreme Court has adopted the following rule to determine if a foreign marriage should be recognized: "The validity of a marriage normally is determined by the law of the place where the marriage is contracted. If valid by that law the marriage is valid everywhere unless it violates a strong public policy of the domicile of the parties." *In re Kinkead's Estate*, 239 Minn. 27, 30, 57 N.W.2d 628, 631 (1953).

The district court determined that respondent had presented competent evidence of marriage. The district court noted that the parties had always held themselves out as

4

married, raised a family together, owned property together, and cohabited as husband and wife. It determined that appellant had the burden of proof for his claim that there was no legally recognizable marriage, and that he had failed to meet that burden.

Appellant argues that the district court erred because it failed to analyze whether the cultural marriage was legal under the marriage laws of Thailand, where it took place. Although appellant's primary argument in the district court was that the cultural ceremony never took place, he also presented evidence that a cultural ceremony would not create a legal marriage in Thailand. Appellant cited material from the U.S. Embassy in Thailand that states "[a] legal marriage in Thailand consists of both parties registering their marriage in person with the local Thai Amphur (Civil Registry Office)." On appeal, appellant cites additional materials that state a marriage must be registered to be valid in Thailand and that Thailand does not recognize common-law marriage.

In *Ma*, this court addressed a challenge to the validity of a foreign marriage. In *Ma*, the husband in a dissolution proceeding argued that the parties' marriage, which occurred in China, was not valid under Minnesota law. 483 N.W.2d at 734. The wife produced the couple's marriage certificate as evidence of marriage. *Id.* This court affirmed the district court's determination that the parties were married, noting that the husband failed to present any "evidence of the requirements for a valid marriage under Chinese law or that the marriage was not contracted legally in China." *Id.* at 735. In the instant case, appellant presented evidence of the requirements for a valid marriage in Thailand and that the couples' cultural marriage ceremony did not conform with those requirements. There is no marriage certificate, and no evidence that either party

5

attempted to register the marriage with Thai officials. Respondent's lawyer even asked her why the parties did not legalize the marriage in the Thai legal system after the cultural ceremony occurred. Despite the fact that appellant presented evidence of the legal requirements of marriage in Thailand and that the parties' cultural ceremony did not conform with those requirements, the district court's order contains no analysis of whether the marriage was legal in Thailand.

Respondent argues that the district court did not err because "the parties were legally married upon the taking of an oath in Thailand." Respondent argues that because she took an oath and then stated that appellant was her husband, "a legal marriage did take place in Thailand." However, the record indicates that the parties took an oath before an American official in the process of immigrating to the United States. Respondent testified that the oath was required before being interviewed for immigration purposes. Thus, it appears the oath was just a prerequisite to be interviewed to be eligible for immigration, not a ceremony meant to create a legal marriage. Further, the oath was taken before an American, not a Thai official, so it does not appear the oath could result in a legal marriage in Thailand.

It is well established that the general rule is that the validity of a foreign marriage is determined by the law of the place where it is contracted. *Id.* On appeal we review whether the district court properly applied the law. *Id.* Because the district court's order contains no analysis of whether the cultural ceremony was legal under Thai law, we must conclude the district court did not properly apply the law and remand for further proceedings.

Finally, we note that we are not expressing an opinion as to whether respondent is entitled to putative-spouse status. Whether an individual is a putative spouse is a question of fact. *Xiong v. Xiong*, 800 N.W.2d 187, 191 (Minn. App. 2011), *review denied* (Minn. Aug. 16, 2011). Although the issue was raised in the district court, the district court did not make a finding on the issue. The role of this court is not to find facts, and thus we decline to decide the issue. *See In re Welfare of M.D.O.*, 462 N.W.2d 370, 374-75 (Minn. 1990) (holding that the role of this court is to correct errors, not to find facts). The issue of whether respondent is entitled to putative-spouse status may be argued before the district court on remand, and in its decision the district court is instructed to make specific findings of fact and conclusions of law on this issue. The district court has the discretion to decide whether to reopen the record on remand.

**Reversed and remanded.**